IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-01758-RM-STV

**358 LIBERATION LLC,**

Plaintiff,

v.

**COUNTRY MUTUAL INSURANCE COMPANY, an Illinois company,**

Defendant.

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 702 MOTION
TO EXCLUDE TESTIMONY AND STRIKE REPORT OF PETER KNOWE**
_____

COMES NOW Plaintiff, 358 Liberation LLC (hereafter "Liberation"), by and through its undersigned counsel Merlin Law Group, P.A., and files this Response in Opposition to Defendant Country Mutual Insurance Company's (hereafter, "Country Mutual" or "Defendant") Rule 702 Motion to Exclude Testimony and Strike Report of Peter Knowe and in support thereof states as follows:

## I.    INTRODUCTION

Mr. Peter Knowe is qualified to serve as an expert and should be allowed to testify in this matter. Defendant has filed a motion to exclude his testimony, but in doing so has made multiple inaccurate statements and misrepresentations. For example, on page 8 of its motion defendant states that Mr. Knowe "has no demonstrable experience…in Colorado insurance law", but Mr. Knowe has testified as an expert in two cases in Colorado in the last 4 years, and in a total of 11 states over the same time period, in both state and federal courts. (See Exhibit B, Testimony of Peter Knowe). In addition, Mr. Knowe worked for insurance companies for more than 25 years

and is familiar with (and even wrote) many of the standards for claims handling for most of the industry. (See Defendant's Exhibit D, Curriculum Vitae of Peter Knowe.)

Defendant also argues that Mr. Knowe's report is "rife with legal conclusions" which preclude the jury from making their own conclusions, yet the examples it offers are clearly open to interpretation. For example, Defendant's argument that Mr. Knowe instructs the jury as to how to Defendant's conclusions regarding fraud have not been denied. The Special Investigations Unit looked into the claim, determined there was no fraud and closed the investigation. The claim notes provided by defendant state as much. Defendant has not brought forward a claim of fraud, so how is Mr. Knowe's plain reading of the claim notes a legal conclusion? Furthermore, Defendant has never stated or argued that Plaintiff was uncooperative throughout the claim process, yet when Mr. Knowe stated that Plaintiff agreed to all inspections and statements this is somehow an interpretation of the policy. Not so. Defendant goes on to argue that Mr. Knowe's report should be excluded because it is devoid of the specific Colorado standards and practices upon which he "basis" his argument. This is a deliberate misstatement of Mr. Knowe's report, and of a section which defendant highlighted for the Court's review. On page 2 of Mr. Knowe's report, he specifically stated that his "opinions are based on my experience with generally accepted insurance industry standards of good faith and fair dealing for the handling of insurance claims." (See Defendant's Exhibit C, Expert Report of Peter Knowe) Additionally, it is of note that Defendant's expert cited to no Colorado specific standards. (See Exhibit C, Expert Report of David Werber)

## II.   FACTUAL BACKGROUND

1.   This case arises out of a disputed insurance claim submitted by Plaintiff to its insurance carrier.

2

2.      At all times relevant hereto, Plaintiff was the owner of a commercial property located in Castle Rock, Colorado.

3.      In exchange for the premium paid by Liberation, Country Mutual issued a Business owner's Insurance Policy, Policy No. AM 9144869 00 (the "Policy"), providing coverage to the Property during the period of January 23, 2013, to January 23, 2014.

4.      In January of 2014 Plaintiff reported a hail damage claim to its property. Plaintiff provided a date of loss of August 22, 2013, when there was a wind, rain, and hail storm at/near the insured property.

5.      Country Mutual found that there was hail damage and issued minimal payments, but denied full roof replacement.

6.      Liberation hired an independent adjusting firm to assist in handling this claim; they estimated Liberation's damages to be $245,066.37.

7.      Defendant has refused to reconsider its insufficient payment offers to Liberation for the damage to its property despite repeated requests for reconsideration from Liberation's representatives.

### III.    LEGAL AUTHORITY

The trial court has broad discretion in admitting evidence under Federal Rule of Evidence ("F.R.E.") 702, and the Daubert factors are helpful but not definitive. *Daubert v. MerrellDow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993).  F.R.E. 702 provides:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

3

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Under F.R.E. 702, a trial judge must ensure that scientific testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (U.S. 1999); *Daubert v. MerrellDow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993). Rule 702 essentially codifies the principles declared in *Daubert* which require expert testimony be reliable before it may be admitted. Rule 702 does not subject expert witnesses to the evidentiary requirement of first-hand knowledge because of the supposition that an expert's opinion will have a reliable basis in the knowledge and experience of the expert's discipline. *Daubert*, 509 U.S. at 592.

The determination of the relevance and reliability of expert testimony is committed to the discretion of the trial court. *Goebel v. Denver & Rio Grand Western Railroad Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The trial court judge must therefore act as a gatekeeper to ensure that expert testimony is both reliable and relevant. *Khumo* at 147; *Alfred v. Caterpillar,Inc.*, 262 F.3d 1083, 1086 (10th Cir. 2001). "The gatekeeper inquiry under Rule 702 is ultimately a flexible determination, keeping in mind that rejection of expert testimony has been the exception rather than the rule." *Ruff v. Ensign-Bickford Industries, Inc.*, 171 F. Supp.2d 1226, 1232 (D. Utah 2001) *citing Goebel*, 215 F.3d at 1089. This is also consistent with the U.S. Supreme Court's recognition that, on balance, a jury should be presented with the necessary relevant evidence it needs to resolve issues unfamiliar to it, and that any prejudice arising from the so-called "suspect" nature of that evidence can be overcome by vigorous cross-examination and careful instructions. *Daubert*, 509 U.S. at 596.

However, the U.S. Supreme Court has directed courts to look beyond the analysis identified in *Daubert*, making it clear that there are categories of expert testimony that should be

admitted even if they do not meet the *Daubert* criteria. In *Kumho Tire*, the U.S. Supreme Court expressly reviewed the law concerning admissibility of evidence of "specialized knowledge" following *Daubert*. The Court noted that many types of specialized knowledge lie outside traditional scientific previews and are necessarily based on personal knowledge or experience, such as handwriting analysis, criminal modus operandi, land valuation, and other areas of expertise not amenable to precise scientific testing. *Kumho Tire*, 526 U.S. at 150. Thus, the Court noted, *Daubert*'s list of factors can only be "helpful, not definitive," and the trial court should be granted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 151-152; *see also Hauck*, 343 F.Supp.2d at 981 ("The list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors.").

## IV.    **ARGUMENT**

A.    Mr. Knowe Has the Qualifications Required to Testify as a Colorado Insurance Industry Expert

Defendant states that Mr. Knowe "lacks the experience or expertise to opine on Colorado insurance law…While Mr. Knowe presumably derives his purported expertise in general insurance law from his work in corporate litigation in an Alabama-based insurance company, he lacks any meaningful legal experience in Colorado insurance law sufficient to quality [*sic*] him as an expert in opining as to what constitutes bad faith in Colorado.  Mr. Knowe has no demonstrable experience or expertise in Colorado insurance law." (Motion, p. 8). Defendant is correct in that Mr. Knowe is not an attorney, and he has never held himself out to be one. A quick review of his curriculum vitae shows as much. (See Defendant's Exhibit D, Curriculum Vitae of Peter Knowe). However, Defendant's statement that Mr. Knowe "has no demonstrable experience…in Colorado insurance law" is patently false. Mr. Knowe served as an expert for a builder in a subrogation

matter after a homeowner settled claims with their insurer (*Steadfast Insurance Company v. Terracon Consultants*, 08-cv-5270, Jefferson County District Court) and again as an expert for a construction company (*Okland Construction v. Travelers*, *Everest Construction, et al*, 11-CV-2652-LTB-BVB, USDC for the District of Colorado). The cases in which Mr. Knowe has provided expert reports, deposition, and/or trial testimony over the last four years have been spread out among Arizona, Alabama, Colorado, Georgia, Kansas, Louisiana, Missouri, Nevada, Pennsylvania, Utah, and Virginia, in both state and federal courts. (Ex. B)

B.    Mr. Knowe Does Not Provide Legal Conclusions

Under Rule 702 an expert "may refer to the law in expressing an opinion" so long as "the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988); *Zick v. Krob*, 872 P.2d 1290, 1294 (Colo. App. 1993) (admission of testimony concerning matters of legal practice was not reversible error where trial court acted as finder of fact and could assess whether the testimony would assist in making its decision). However, an expert cannot express legal opinions "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht*, 853 F.2d at 810.

Defendant states that Mr. Knowe instructs the jury on "how to interpret Plaintiff's insurance policy with Defendant" and cites to a sentence within the report wherein Mr. Knowe states that the Plaintiff fully cooperated as a duty under the policy by allowing multiple inspections and providing all requested documents. Defendant has never claimed that Plaintiff did not cooperate with its requests for inspections and documents on this claim. Therefore, Mr. Knowe is stating the fact that Plaintiff did cooperate with inspection and document requests and is not opining on the law or interpreting policy language.

6

Defendant next implies that Mr. Knowe instructs the jury on how to interpret Defendant's motivation in denying Plaintiff's claim when, again, he merely states that the Knott Laboratory final report had conflicting findings as to evidence of hail damage (the March 2014 report found hail damage, but that it was from prior to the inception of the Country policy; the report from prior to the Country policy, also performed by Knott Laboratory, found no hail damage) to the most expensive item (the roof) in Plaintiff's claim. (See Defendant's Ex. C). Mr. Knowe did not state that Defendant denied the roof because it was expensive, merely that Defendant denied the most expensive item. Jurors (and this Court) can interpret these facts how they wish.

Defendant then questions Mr. Knowe's statement as to this not being an unfounded or fraudulent claim. To Plaintiff's knowledge, Defendant has not accused it of such; if it intends to, then this is a stunning revelation. Mr. Knowe states that SIU units seek to limit fraud (they do and, as he worked in claims handling for nearly thirty years, Mr. Knowe would be well aware of what SIU is and the various aspects of a fraudulent claim) so, again, this is a statement of fact, not a legal conclusion.

Defendant wraps up its argument by stating that "Mr. Knowe's report is absent of the specific Colorado standards and practices upon which he basis [*sic*] his argument." There are no specific Colorado insurance industry practices and standards. Just as with medicine, engineering, accounting, and even lawyering, the practice and standard is generally the same state to state, with minor differences in details. Contrary to Defendant's assertion that the report does not identify the industry standards and authority supporting the conclusions, Mr. Knowe's listing of his qualifications beginning on the first page, which include being a member of a National Audit Team for 7 years, creating claims handling guidelines, coordinating Department of Insurance compliance efforts, directing and participating in audit reviews of claims operations, attending insurance

industry workshops on good faith handling and creating industry guidelines for proper claims adjustment, reporting industry trends to an insurer's board of directors for creation of new proper claim handling standards and developing good faith training, working with counsel on resolution of bad faith litigation claims for an insurer, testifying as an insurer's representative for all trials nationwide for over 11 years, handling all claims training for an insurer for over 11 years, and managing the resolution of all bad faith claims for over 11 years for a national carrier would seem to clearly elucidate Mr. Knowe's knowledge of industry standards and authority. (See Def's Ex. D). Further, Defendant's expert, David Werber, an attorney in Colorado who has represented insurance companies but, based on a review of his curriculum vitae, has not worked in the insurance industry and whose practice focuses on "personal injury, construction defect, professional liability, and premises liability claims", fails to cite to any industry claims handling standards. (See Ex. C). Defendant's argument to exclude Mr. Knowe's testimony and report would also exclude its own expert.

C.      Mr. Knowe Does Not Misstate Facts Nor Are His Conclusions Unreliable

Defendant accuses Mr. Knowe of misstating and ignoring material facts and offers several as evidence, and suggests his reliance upon unsupported facts and "willful" ignorance of others makes his opinion unreliable.

The first example of a misstated fact is that Mr. Knowe does not mention that Plaintiff hired a public adjuster several months before reporting the claim to Defendant. Defendant does not state why this is misstated or ignorance of a material fact. Claimants frequently secure public adjusters (or even attorneys) prior to reporting a loss because they may not realize there is one, particularly when it comes to hail events and large commercial buildings, because they are not familiar with the claims process or because they don't have time to personally handle the claim,

among other reasons. There were no other hail events in the area between the reported date of loss and the date on which Defendant inspected the property, so Defendant was not prejudiced by the delay. Mr. Knowe's report does not state that the delay between the reporting of the loss and the beginning of the investigation was unreasonable; he states the treatment of Plaintiff as though this was a fraudulent claim was unreasonable. (Defendant's Ex. C)

Another example of Defendant's misstated facts and arguments is that Mr. Knowe failed to include the roofing contractor's error regarding the incorrect date of loss. Although this seems to be terribly important in Defendant's eyes, that is Defendant's opinion. Mr. Knowe's report is his, and this error, which was corrected by the roofer and explained (as the Court may remember, there were numerous severe thunderstorms and hail storms on June 6, 2012, and the date stuck out in the roofing contractor's memory), was an innocent mistake.

Defendant also states that:

"Mr. Knowe also fails to note that the prior Knott Laboratory inspection found that hail damage and the need to replace the rood preexisted the issuance of Country Mutual's insurance property…The first Knott report was written in response to the Plaintiffs [*sic*] prior insurance claim based on the June 6, 2012, date of loss. That report did not conclude that there was no hail damage."

Unfortunately, Defendant is the one misstating or misinterpreting facts. The first Knott Laboratory report states: "Based on the observations presented in this report, Knott Laboratory determined the subject roof has not been damaged by hail." (See Exhibit D, Knott Laboratory Report dated March 29, 2013, p. 4-5). Defendant goes on to use the Assurance Denial Letter to support its claim "that the roof did not suffer any hail damage requiring replacement;" the letter in fact states "following the inspection of the loss location, it was determined that there was no hail damage to the roof surface." (See Def's Ex. B). This just bolsters Plaintiff's claim. There was no hail damage prior to the August, 2013 storm.

D.      Mr. Knowe's Experience, Knowledge, Education, and Training Would Provide Significant Assistance to Jurors in Understanding the Claims Process

According to the Insurance Information Institute, between 2010 and 2014, only seven percent (7%) of insured homeowners filed an insurance claim, and only 3.1 percent of insured homeowners had a wind and/or hail claim (http://www.iii.org/fact-statistic/homeowners-and-renters-insurance). Most people will never go through the property claims process and will not know what should and should not happen. An expert in that process, who has worked for decades for insurance companies ensuring the proper processing of claims and is now offering his services to both insurance companies and policyholders, can help the people who will likely make up the jury understand the often complex process.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court deny Defendant's Motion and grant any other such relief as this Court deems just and appropriate.

Respectfully submitted,

 /s/ Brandee B. Bower
Brandee B. Bower, Esq.
MERLIN LAW GROUP, P.A.
Colorado Bar No. 44702
999 18th Street, Suite 3000
Denver, CO 80202
Tel: 303.357.2374
Fax: 303.357.2377
Email: bbower@merlinlawgroup.com

*Attorneys for Plaintiff 358 Liberation LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2016, a true and correct copy of the foregoing

Plaintiff's Response in Opposition to Defendant's Rule 702 Motion to Exclude Testimony and

Strike Report of Peter Knowe was served on counsel of record via ICCES:

Brendan O. Powers
Chadwell Murley
SPIES, POWERS & ROBINSON, P.C.
950 South Cherry Street, Suite 700
Denver, CO 80246
Telephone: (303) 830-7090
Facsimile: (303) 830-7089
Email: powers@sprlaw.net
        murley@sprlaw.net

                            /s/ Mary Gibbons
                            Mary Gibbons, *Paralegal to Brandee Bower, Esq.*

11