IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-01758-RM-STV

**358 LIBERATION LLC,**

Plaintiff,

v.

**COUNTRY MUTUAL INSURANCE COMPANY, an Illinois company,**

Defendant.

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 702 MOTION TO EXCLUDE TESTIMONY AND STRIKE REPORT OF STEVEN THOMAS

---

COMES NOW Plaintiff, 358 Liberation LLC (hereafter "Liberation"), by and through its undersigned counsel Merlin Law Group, P.A., and files this Response in Opposition to Defendant Country Mutual Insurance Company's (hereafter, "Country Mutual" or "Defendant") Rule 702 Motion to Exclude Testimony and Strike Report of Steven Thomas and in support thereof states as follows:

### I.      INTRODUCTION

Mr. Steven Thomas is qualified to serve as an expert and should be allowed to testify in this matter. Defendant has filed a motion to exclude his testimony, but in doing so has made multiple inaccurate statements and misrepresentations. For example, on page 8 of its motion defendant states that Mr. Thomas is not qualified to serve as an expert because he has performed roof evaluations "predominantly in the state of Florida." First, the fact that Mr. Thomas has evaluated roofs in states other than Colorado doesn't devalue his experience, in fact, it increases it because he has inspected multiple types of roofs in multiple climates. Second, this statement is

false.  Mr. Thomas provides roof evaluations and testing in the following states:  Florida, Colorado, Texas, Missouri, Oklahoma, Mississippi, New York, and Arizona.  Third, according to Verisk Solutions, the states with the largest hail claim losses are Texas, Colorado, and Oklahoma, while Florida has the third highest average annual claim severity.  (See Exhibit E, Verisk Insurance Solutions "Property Hail Claims in the United States: 2000-2013").  Mr. Thomas performs work in all these states and is extremely experienced and well-qualified to perform roof evaluations.

Another misrepresentation by defendant appears in the argument regarding reliable methodologies.  Defendant states that "the methodology and protocols for the testing are not disclosed" (Motion, p. 8), yet on the first page of Mr. Thomas' report, included as Exhibit C to Defendant's Motion, in the section titled "Methodology", Mr. Thomas states that "Visual observations are also performed in general accordance with RIEl and NRCA Standards as posted in the 1999 issue of 'Guidelines to Roof Inspections.'" In the next section, titled "Moisture Survey Methodology", Mr. Thomas describes how he performed the moisture survey testing. On pages 9-10 of defendant's Motion, defendant argues that Mr. Thomas' "report does not state any standard or reasoning upon which he bases his conclusion that the moisture is related to the hailstone impact…" Defendant offers no support for these positions. It does not allege that there are any other potential causes of the moisture readings found by Mr. Thomas, nor does it allege the damages could have been produced by another cause. Contrary to Defendant's position, Mr. Thomas did rule out other potential causes of the damages that he observed and attributed to hail. Mr. Thomas has extensive experience in performing damage evaluations on roofing systems and based on his knowledge, training, and experience, came to the conclusion that the impact marks he observed were caused by hail. He similarly determined that the water trapped under the roofing system correlated to the hail impacts that he observed.

While Mr. Thomas obviously does some work in litigation matters for plaintiffs, he also works for insurance companies. Some examples include Lloyd's of London, Travelers Insurance (for which he serves as a preferred vendor), Scottsdale Insurance, Olympus Insurance Company, Citizens Insurance Company, Lexington Insurance Company, and Zurich Insurance Company. (See Curriculum Vitae of Steve Thomas, Exhibit B). They place such trust in Mr. Thomas that he is frequently retained in order to evaluate roofs for underwriting purposes. (See Affidavit of Steven M. Thomas, Exhibit A)

Finally, not only has Mr. Thomas served many times as an expert for plaintiffs and defendants, but he has also served as an expert for the court. Mr. Thomas was appointed to serve as an expert for the court in Pennsylvania. The court requested Mr. Thomas' assistance in a mediation to assist in determining if there was damage to each roof; if the damage was the result of hail or a high wind event; when the damage occurred; and the recommended methodology and cost of addressing any damage that was the result of hail or a wind event (Case 2:14-cv-01707, Eagle Pointe Condominium Association v. Main Street America Assurance Company, *et al.;* Order attached as Exhibit C).

## II.   FACTUAL BACKGROUND

1. This case arises out of a disputed insurance claim submitted by Plaintiff to its insurance carrier.

2. At all times relevant hereto, Plaintiff was the owner of a commercial property located in Castle Rock, Colorado.

3. In exchange for the premium paid by Liberation, Country Mutual issued a Business owner's Insurance Policy, Policy No. AM 9144869 00 (the "Policy"), providing coverage to the Property during the period of January 23, 2013, to January 23, 2014.

4.      In January of 2014 Plaintiff reported a hail damage claim to its property. Plaintiff provided a date of loss of August 22, 2013, when there was a wind, rain, and hail storm at/near the insured property.

5.      Country Mutual found that there was hail damage and issued minimal payments, but denied full roof replacement.

6.      Liberation hired an independent adjusting firm to assist in handling this claim; they estimated Liberation's damages to be $245,066.37.

7.      Defendant has refused to reconsider its insufficient payment offers to Liberation for the damage to its property despite repeated requests for reconsideration from Liberation's representatives.

### III.    <u>LEGAL AUTHORITY</u>

The trial court has broad discretion in admitting evidence under Federal Rule of Evidence ("F.R.E.") 702, and the Daubert factors are helpful but not definitive. *Daubert v. MerrellDow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993).  F.R.E. 702 provides:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Under F.R.E. 702, a trial judge must ensure that scientific testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (U.S. 1999); *Daubert v. MerrellDow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993). Rule 702 essentially codifies the principles

declared in *Daubert* which require expert testimony be reliable before it may be admitted. Rule
702 does not subject expert witnesses to the evidentiary requirement of first-hand knowledge
because of the supposition that an expert's opinion will have a reliable basis in the knowledge and
experience of the expert's discipline. *Daubert*, 509 U.S. at 592.

The determination of the relevance and reliability of expert testimony is committed to the
discretion of the trial court. *Goebel v. Denver & Rio Grand Western Railroad Co.*, 215 F.3d 1083,
1087 (10th Cir. 2000). The trial court judge must therefore act as a gatekeeper to ensure that expert
testimony is both reliable and relevant. *Khumo* at 147; *Alfred v. Caterpillar,Inc.*, 262 F.3d 1083,
1086 (10th Cir. 2001). "The gatekeeper inquiry under Rule 702 is ultimately a flexible
determination, keeping in mind that rejection of expert testimony has been the exception rather
than the rule." *Ruff v. Ensign-Bickford Industries, Inc.*, 171 F. Supp.2d 1226, 1232 (D. Utah 2001)
*citing Goebel*, 215 F.3d at 1089. This is also consistent with the U.S. Supreme Court's recognition
that, on balance, a jury should be presented with the necessary relevant evidence it needs to resolve
issues unfamiliar to it, and that any prejudice arising from the so-called "suspect" nature of that
evidence can be overcome by vigorous cross-examination and careful instructions. *Daubert*, 509
U.S at 596.

However, the U.S. Supreme Court has directed courts to look beyond the analysis
identified in *Daubert*, making it clear that there are categories of expert testimony that should be
admitted even if they do not meet the *Daubert* criteria. In *Kumho Tire*, the U.S. Supreme Court
expressly reviewed the law concerning admissibility of evidence of "specialized knowledge"
following *Daubert*. The Court noted that many types of specialized knowledge lie outside
traditional scientific previews and are necessarily based on personal knowledge or experience,
such as handwriting analysis, criminal modus operandi, land valuation, and other areas of expertise

not amenable to precise scientific testing. *Kumho Tire*, 526 U.S. at 150. Thus, the Court noted, *Daubert*'s list of factors can only be "helpful, not definitive," and the trial court should be granted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 151-152; *see also Hauck*, 343 F.Supp.2d at 981 ("The list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors.").

## IV.    **ARGUMENT**

1.    Mr. Thomas is qualified to render the expert opinions contained within his report.

Steve Thomas has extensive knowledge, skill, experience, training, and education regarding roof conditions and testing of the same. Further evidence of Mr. Thomas' qualifications is contained in his Affidavit attached hereto and incorporated herein by reference. He has more than 25 years of experience in working as a roofing consultant and has inspected more than 35,000 roofs. (Ex. A) Furthermore, he serves on the American Society for Testing and Materials' committee on roofing. (Ex. A) The ASTM is one of the most widely recognized international standards organizations; in fact, more than 12,000 of its standards operate globally and are incorporated in numerous federal, state, and local laws and regulations. (www.astm.org)

Defendant argues that since Mr. Thomas is not an engineer he is not qualified to make any determination as to roof damage. Mr. Thomas has not held himself out as an engineer, and as defendant points out in its motion, he specifically states that his firm is not an engineering firm. However, being an engineer is not a prerequisite for determining wind and hail damage. Further, Mr. Thomas was appointed to serve as an expert for the court in Pennsylvania. The court requested Mr. Thomas' assistance in a mediation to assist in determining if there was damage to each roof; if the damage was the result of hail or a high wind event; when the damage occurred; and the

recommended methodology and cost of addressing any damage that was the result of hail or a wind event (Case 2:14-cv-01707, *Eagle Pointe Condominium Association v. Main Street America Assurance Company*, *et al.;* Ex. C). Additionally, Mr. Thomas has testified as an expert 20 times in deposition or at trial in the last 4 years, and in 50 depositions and 12 times at trial over the course of his career, and no federal or state court has ever excluded or limited his testimony. (See Ex. A)

      2.      <u>Mr. Thomas' findings and opinions are the result of reliable methods.</u>

Mr. Thomas performed a number of tests on the damaged property at issue. These included visual observations, moisture survey (electrical capacitance/impedance testing) and forensic roof sample desaturation testing. (Def's Ex. C) Moisture survey results showed that of 266 primary readings, 21 had elevated moisture readings, which constituted approximately 525 square feet of wetted materials. (Def's Ex. C) The desaturation testing results showed that there was identifiable fracturing of the internal first reinforcement with wetted insulation below the sample, but for all three samples the second and third internal reinforcement layers were damaged in testing and thus the results were inconclusive. (Def's Ex. C)

The visual inspection was performed to identify evidence of hailstone impact damages. (Def's Ex. C) Hailstone impact related damages were observed visually upon the modified bitumen sections as both gravel loss and surface bruising. (Def's Ex. C) Mr. Thomas believes that the damage to the roof membrane and the internal reinforcement layers facilitated moisture infiltration into underlying roofing materials and interior spaces below, reduced the intended R-value of the fiberboard insulation board, and ultimately lead to physical degradation and a diminished service life of the roofing system. (Def's Ex. C) Three samples of the modified bitumen roof were removed in hail impact areas in order to perform desaturation testing. (Def's Ex. C) Two of the samples resulted in the positive identification of rupturing of internal reinforcement layers. (Def's Ex. C)

Defendant incorrectly states that Mr. Thomas found the results of the desaturation tests to be inconclusive. This is simply not true.  The inconclusive aspect of the testing was limited to the 2nd and 3rd internal reinforcement layers only.  (Def's Ex. C) In samples T1 and T2, desaturation testing proved conclusively that there were identifiable fracturing of the first reinforcement.  (Def's Ex. C) On page 9 of its Motion, defendant states that, '[t]he desaturation testing was largely inconclusive and thus irrelevant to forming Mr. Thomas' opinion."  However, Mr. Thomas' report clearly states that samples T1 and T2 showed "identifiable fracturing of the internal first reinforcement with wetted insulation below the sample." (Def's Ex. C) Mr. Thomas' report did state that on samples T1 and T2 the second and third internal reinforcement layers were damaged during testing and the results were inconclusive, and that Sample T3 showed no identifiable fracturing and that, again, the second and third internal layers were damages during testing and the results were inconclusive. (Def's Ex. C) In addition, Mr. Thomas' report stated that "It is our opinion that the hailstone impacts damaged to the inner ply's of the built up roofing materials, resulted in observable damage, and causing an irreparable reduction in the service of the roofing materials." (See Def's Ex. C, P. 4, Para. 3).

The conclusion that hail damaged the property is also supported by the Knott Laboratory report dated March 7, 2014. Whether there is hail damage is not the main issue in this case. The question is when did the hail damage occur. Defendant tries to mislead the court by only revealing part of the story. Knott Laboratory issued a report in March 2013 for 358 Liberation's prior carrier which determined that "the subject roof was not damaged by a hail event" (p. 1) (Exhibit D, Knott Laboratory March 29, 2013 report). Further, Defendant's Exhibit B, the Denial Letter from prior insurer Assurance, also states this (at paragraph 3, "it was determined that there was no hail damage

to the roof surface."). Yet Defendant faults Mr. Thomas' report for failing to reference "preexisting hail damage" of which there is no evidence.

Mr. Thomas' report also discusses the problematic repairs made to the roof that have further facilitated moisture infiltration to the interior of the building. He stated that attempts to further repair these areas would severely diminish their already reduced and impaired properties and complete replacement was the only way to return the system to pre-loss condition.

3.    Mr. Thomas' opinions are relevant and reliable to the issues before this Court.

As evidenced by his Affidavit (Ex. A), Mr. Thomas' opinions are relevant and reliable to resolution of the main issues being presented. Mr. Thomas has been a practicing roofing consultant since 1991. (Ex. A) During that time, he has personally evaluated more than 35,000 roofing systems, including more than 300 in Colorado, and performed countless moisture surveys, wind uplift testing, fastener uplift testing, and other types of testing relating to damage assessment. (Ex. A) He has been hired as an expert by both policyholders and insurance companies. (Ex. A) He is a certified course instructor for roofing, certified by the Roof Consultants Institute, and has taught classes in Florida, Colorado, New Jersey, and Nevada in 2016 alone. (Ex. A)

4.    Mr. Thomas' testimony will assist the jury in understanding the evidence or in determining a fact issue.

Any subjects which require specialized knowledge and are the subject of litigation are open to potential expert testimony and subject to the Court's scrutiny. There is no enumerated "list" of areas which allow for expert testimony. Theoretically, the areas of potential expert testimony are limitless.

Mr. Thomas' testimony will assist the trier of fact in this matter as it pertains to storm damages which occurred on plaintiff's property. Defendant argues that Mr. Thomas' opinions are flawed because he did not consider other storm events that could have caused the damages he

observed; however, the date that the damages occurred is not part of Mr. Thomas' report. Mr. Thomas' report simply details the condition of the roof at the time that he inspected it, the testing he performed, and the results thereof. There is no analytical gap because of the date of the testing.

>        5.        Mr. Thomas is not an attorney and is not setting forth any legal opinions.

A good portion of Defendant's motion consists of case law and argument purportedly to exclude the legal testimony of Mr. Thomas. Mr. Thomas has not set forth any such opinions in his report and has not ever held himself out as an attorney. This portion of defendant's motion has nothing to do with Mr. Thomas and should not be considered by the court. Mr. Thomas is, instead, a very experienced roofing expert who has inspected more than 35,000 roofs and who has been appointed by the court to serve as its expert witness. (Case 2:14-cv-01707, Eagle Pointe Condominium Association v. Main Street America Assurance Company, *et al.;* Ex. C). Mr. Thomas' opinions are relevant and reliable and he should be allowed to testify in this matter.

### V.        CONCLUSION

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court deny Defendant's Motion and grant any other such relief as this Court deems just and proper.

Respectfully submitted,

 /s/ Brandee B. Bower
Brandee B. Bower, Esq.
MERLIN LAW GROUP, P.A.
Colorado Bar No. 44702
999 18th Street, Suite 3000
Denver, CO 80202
Tel: 303.357.2374
Fax: 303.357.2377
Email: bbower@merlinlawgroup.com

*Attorneys for Plaintiff 358 Liberation LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2016, a true and correct copy of the foregoing

Plaintiff's Response in Opposition to Defendant's Rule 702 Motion to Exclude Testimony and

Strike Report of Steven Thomas was served on counsel of record via ICCES:

Brendan O. Powers
Chadwell Murley
SPIES, POWERS & ROBINSON, P.C.
950 South Cherry Street, Suite 700
Denver, CO 80246
Telephone: (303) 830-7090
Facsimile: (303) 830-7089
Email: powers@sprlaw.net
       murley@sprlaw.net

                                    /s/ Mary Gibbons
                                  Mary Gibbons, *Paralegal to Brandee Bower, Esq.*