**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-01758-RM-STV

358 LIBERATION LLC,

    Plaintiff,

v.

COUNTRY MUTUAL INSURANCE COMPANY,

    Defendant.

___

**OPINION AND ORDER**
___

Pending before the Court are defendant Country Mutual Insurance Company's ("defendant") motions to exclude the testimony and expert reports of Steven Thomas ("Thomas") (ECF No. 44) and Peter Knowe ("Knowe") (ECF No. 45). Plaintiff 358 Liberation LLC ("plaintiff") has responded in opposition to both motions (ECF Nos. 49, 50), and defendant has filed replies in support (ECF Nos. 53, 54). The Court makes the following findings.

**I.    Legal Standard**

Rule 702 of the Federal Rules of Evidence ("Rule 702") governs the admission of expert evidence in federal court. Fed.R.Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999). Rule 702 provides as follows.

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

The Court's role in considering proposed expert evidence is one of a "gatekeeper." *Kumho Tire*, 526 U.S. at 147. Factors that might be relevant in carrying out this role include: (1) whether a theory or technique can be or has been tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error to a technique and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant community. *Id*. at 149-150. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (quotation omitted).

The proponent of expert evidence bears the burden of establishing its admissibility. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

## II. Discussion

### A. Thomas

Defendant objects to the admission of testimony and an expert report from Thomas for three principal reasons: (1) Thomas is not qualified; (2) Thomas' opinions are not the result of reliable principles and methods; and (3) Thomas' opinions will not help the trier of fact. (ECF No. 44 at 8-10.) The Court disagrees with the first and third arguments, but agrees with the second, and thus, finds that Thomas' testimony and expert report are inadmissible.

As to Thomas' qualifications, defendant asserts that Thomas is not a certified roofing contractor, is not an engineer, and his experience lacks the requisite knowledge to opine on damage

2

causation and damage remediation. (*Id*. at 8.) With respect to Thomas not being a certified roofing contractor or an engineer, this appears to be undisputed (*see* ECF No. 50 at 6), but the Court does not understand why it renders Thomas unqualified. Thomas' expert report specifically states that his company is not an engineering or roofing contractor firm, but the company is a licensed "roof testing firm specializing in forensic roof evaluations." (*See* ECF No. 44-3 at 6.) Moreover, Thomas' resume states, *inter alia*, that his present and past employment has involved roof evaluations, he is certified in how to perform roof inspections, and he teaches a class on how to determine hail/wind damage from normal wear and tear. (ECF No. 44-4 at 1-2.) Defendant's brief discussion of Thomas' resume offers no adequate objection to these qualifications. (*See* ECF No. 44 at 8.) As a result, for purposes of this case, the Court finds Thomas qualified to assess and quantify potential hailstorm damage to plaintiff's roof.

As for Thomas' ability to assist the trier of fact, although plaintiff's defense of Thomas on this ground is, at best, bare-boned, the Court nonetheless finds that the opinions expressed in Thomas' expert report could be helpful to a jury. The important thing to note in this regard is the parties' apparent agreement as to what may be one of the main disputed issues between them: *when* an alleged hailstorm damaged plaintiff's roof. (*See* ECF No. 44 at 10; ECF No. 50 at 8.) Plaintiff believes that the hailstorm that damaged its roof (and for which it seeks compensation) occurred during the time of its insurance policy with defendant. (ECF No. 50 at 3-4.) Defendant believes that (most of) the damage to plaintiff's roof occurred prior to the effective date of the parties' insurance policy. (ECF No. 44 at 2-3.) Thomas' opinion is that "hailstorm related damages were sustained to the evaluated building." (*See* ECF No. 44-3 at 6.) As defendant asserts, an earlier analysis of plaintiff's roof (for damage that allegedly occurred in June 2012) found that, although the roof had

3

been "impacted" by hail, it had not been damaged by hail. (*See* ECF No. 44 at 2-3; *see also* ECF No. 50-4 at 3-6.) Thus, Thomas' opinions may be helpful because, if the roof was not damaged by hail in the earlier analysis, but it was by the time of Thomas' analysis, then a trier of fact could infer that the hail damage occurred at some point in time after the first analysis such as during the time that the parties' insurance policy was effective.

This leaves the reliability of Thomas' opinions. Although plaintiff dedicates a portion of its response to the reliability of Thomas' opinions, nowhere does plaintiff actually explain the same; instead, all plaintiff does is regurgitate statements and findings from Thomas' expert report. (*See* ECF No. 50 at 7-9.) Important here is the purpose for which Thomas' opinions are offered: to quantify any potential hailstorm damage to plaintiff's roof. (*See* ECF No. 44-3 at 1.) To do this, Thomas used moisture surveying, desaturation testing, and visual observations. (*See generally* ECF No. 44-3.)

The first problem is with the moisture surveying. In essence, moisture surveying helps uncover areas of entrapped water within a roof. (ECF No. 44-3 at 1.) Thomas found there to be 21 readings (or approximately 525 square feet) of roofing material with elevated moisture readings. (*Id*. at 2-3.) Thomas' expert report fails to explain, however, how an elevated moisture reading results in a finding that, that portion of the roof suffered from hail damage or that hail damage caused the elevated reading. Instead, without explanation, Thomas simply states that, in his opinion, damage to plaintiff's roof has "facilitated moisture infiltration …." (*See id*. at 4.) Thomas' failure to explain why hail caused the elevated moisture readings is particularly important here, in light of Thomas' subsequent statement that "repairs along the parapet wall" had "greatly facilitated moisture infiltration as evidenced from the interior of the building." (*See id*. at 5.)

4

The second problem is with the desaturation testing. In essence, the purpose of such testing is to assess and quantify "observable hailstorm related damages sustained to multiple roof membrane samples." (ECF No. 44-3 at 2.) Thomas removed a total of three roof samples for this testing. (*Id.*) Thomas summarized the results as follows. The first and second samples showed "identifiable fracturing" to the "internal first reinforcement" layer, while the second and third reinforcement layers were damaged, and thus, the results for the latter two layers were inconclusive. (*Id.* at 3.) The third sample showed "no identifiable fracturing" of the first internal reinforcement, while the second and third reinforcement layers were damaged, again producing inconclusive results. (*Id.*) Thomas opined that the "rupturing of internal reinforcement layers" in the first and second samples resulted in "observable" damage to the roof. (*Id.* at 4.)

In theory, the Court could accept that damage to a total of two internal reinforcement layers (out of a total of nine) could warrant the opinion that hail had caused damage to a roof. That is essentially Thomas' opinion. (*See id.*) However, in this case, Thomas' expert report, and plaintiff's non-response to this issue, do not put the Court in the position to accept that theory. Notably, there is no explanation in the expert report as to why the rupturing of two internal reinforcement layers, while six other layers were damaged to the point of being inconclusive and one layer showed no identifiable fracturing, reliably results in a finding that hail caused the observable damage. There is, in fact, no explanation as to how many internal reinforcement layers need to be damaged in order to produce such a conclusion, or when the number of inconclusive or negative results should produce a different conclusion. As such, the Court is in no position to assess what standards Thomas used in coming to his opinions, or whether his opinions are based upon principles and methods that have been tested, subjected to peer review or publication, contain a high known or potential rate of error,

5

or enjoy a general acceptance within the roof-testing community. *See Kumho Tire*, 526 U.S. at 149-150.

This leaves Thomas' visual observations, but shorn of their link to the unreliable moisture surveying and desaturation testing, the visual observations are not relevant to the stated purpose of Thomas' testimony and expert report: to quantify damage to plaintiff's roof caused by a hailstorm event. In any event, even if the visual observations were somehow relevant to this purpose, there is no explanation how visual observations alone are a reliable means of quantifying potential hailstorm damage to a roof. Rather, the expert report appears to reflect that visual observations go hand-in-hand with moisture surveying and desaturation testing. (*See* ECF No. 44-3 at 4.)

As a result, the Court finds that Thomas' testimony and expert report are not reliable, and thus, excludes the same from the upcoming trial.

**B.     Knowe**

Defendant objects to the admission of testimony and an expert report from Knowe for four principal reasons: (1) Knowe is unqualified to opine on Colorado insurance law; (2) Knowe improperly opines on the legal significance of various facts; (3) Knowe's expert report makes numerous misstatements of fact; and (4) any probative value of Knowe's testimony would be significantly outweighed by the danger of unfair prejudice to defendant. (ECF No. 45 at 8-13.) The Court disagrees with defendant's framing of the first argument, and, with respect to the other arguments, agrees that some of Knowe's statements should be excluded, whereas others (to the extent they are misstatements or prejudicial) can be ameliorated by cross-examination should Knowe be allowed to testify or the presentation of opposing evidence.

As for Knowe's qualifications, defendant asserts that, although Knowe purports to be an expert in generally accepted insurance industry standards, he lacks expertise to opine on Colorado insurance law. (ECF No. 45 at 8.) The Court does not believe this is a "qualifications" issue. As an initial matter, defendant does not contest that Knowe may be an expert in "generally accepted insurance industry standards," and, based on the record, the Court does not find any reason to find otherwise. Defendant's concern is with whether Knowe is qualified as to Colorado insurance law. However, if Colorado insurance law is itself premised upon or uses "generally accepted insurance industry standards," whether or not Knowe has spent some or none of his career in Colorado (as defendant suggests) would be irrelevant because Knowe would have knowledge of at least some of the standards upon which Colorado insurance law is based.

As far as the Court is concerned then, this is a "relevance" issue. In other words, is Knowe's potential testimony and expert report on generally accepted insurance industry standards *relevant* to this case? As discussed in more detail *infra*, the parties have not sufficiently briefed that issue to date. But, it is no basis for finding Knowe to be unqualified for the purpose that his testimony and expert report are proposed.

As for defendant's arguments that Knowe's expert report improperly opines on the legal significance of various facts and misstates numerous facts, the Court has reviewed the examples of such improper opinions and misstatements in defendant's motion (ECF No. 45 at 8-12), and agrees that some should be excluded, whereas others should not. The Court starts with the statements defendant identifies that should be excluded. First, Knowe's statement that "this claim was not fraud nor unfounded." (ECF No. 45-3 at 6.) Knowe provides no basis for making this opinion, such as

7

pointing to facts or having any expertise in the concept of fraud.[1] *See Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 971 (Colo. App. 1996) (explaining that an expert witness' testimony was not unfairly prejudicial where the witness testified to the facts of an insurer's conduct in light of relevant industry standards). Here, Knowe mentions no facts nor any relevant standards in expressing that plaintiff's claim was not fraud.

Second, Knowe's following statement: "… but an attempt to not find the hail damage to the most expensive items as occurring from hail events prior to the policy period covered by [defendant]." (ECF No. 45-3 at 7.) Fundamentally the Court excludes the statement because it makes no sense. If plaintiff wishes to use an expert witness, at the very least, the witness' statements must be comprehensible, which the statement quoted *supra* is not. Defendant believes that the statement is designed to implicate its motivations in denying plaintiff's claim, in that Knowe may be stating that defendant denied plaintiff's claim because the roof was an expensive item. (*See* ECF No. 45 at 8.) To the extent that is the intent of Knowe's statement, the Court agrees with defendant. Knowe simply has no knowledge of defendant's reasons for denying plaintiff's claim, nor does Knowe's expertise give him any reliable basis to discern defendant's motivations. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786 (1993) (explaining that, although experts are permitted "wide latitude" in offering opinions, this is presumably "premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."). Plaintiff asserts that Knowe's statement is simply meant to mean that defendant "denied the most expensive item." (ECF No. 49 at 7.) As an initial matter, defendant did not deny

---

[1] The Court does not exclude, however, the earlier part of the same highlighted sentence that reads: "SIU units seek to limit fraud," as the Court does not read defendant's objection as extending to that part of the sentence (*see* ECF No. 45 at 8), and the Court would not exclude it even if the objection did.

any items, it denied (most of) plaintiff's claim. To link the expense of an item to the denial of the claim, which, at the very least, Knowe does, does precisely what plaintiff contends does not happen: it gives a reason for the denial. In any event, even if Knowe's statement was as innocent as plaintiff contends, it is has no relationship to the reason for Knowe's expert testimony; it is simply a gratuitous extra that can quite easily be established through other evidentiary means, such as invoices.

Third, Knowe's statement that "[t]his hail damage to [plaintiff's] property must have occurred on August 22, 2013 by the best evidence present, all investigation and completely reviewed per insurance custom and practice." (ECF No. 45-3 at 8.) Again, this statement (at least the part after "2013") makes no sense. In any event, *when* the hail damage purportedly happened is far outside the scope of Knowe's expertise. As discussed *supra*, Knowe's expertise is in the "generally accepted insurance industry standards of good faith and fair dealing for the handling of insurance claims." (*Id*. at 2.) Not in Knowe's expertise, therefore, is when hail allegedly damaged plaintiff's roof, as that has nothing to do with good faith and fair dealing in handling insurance claims.[2]

Fourth, much the same is true with respect to Knowe's statement that plaintiff "was entitled to the replacement cost of the repairs under the [insurance] policy per insurance custom and practice." (ECF No. 45-3 at 8.)[3] Knowe is not an expert, however, in interpreting contract provisions, therefore, his statement—that the parties' contract entitled plaintiff to payment—falls

---

[2] The Court further adds that, to the extent Know is allowed to testify, he will not be allowed to use the phrase "best evidence." Whatever latitude experts may be allowed, it is not to describe what evidence is "best."

[3] The Court does not exclude the earlier part of the same highlighted sentence, i.e., the part that reads: "[Plaintiff] gave timely notice to [defendant] that it was replacing the hail damaged property within the required 180 days post report of loss …." (ECF No. 45-3 at 8.) To the extent that defendant contests the timeliness of notice, it can correct the record through cross-examination of Knowe.

9

outside his expertise. The Court adds further that simply adding the phrase "per insurance custom and practice," as Knowe does frequently throughout his expert report, does not save this statement. Knowe makes no effort to explain how his knowledge of insurance custom and practice enables him to interpret contracts, or how those customs and practices are relevant to good faith and fair dealing in the handling of insurance claims.

Fifth, another example of the errant use of the phrase "per insurance custom and practice" is in the statement that "[t]he best evidence is the local contractor estimate and opinion the roof must be replaced to stop the leaking, the hail damaged roof is leaking, hail damage was visible on the roof, photos of the roof clearly show hail damage per insurance custom and practice." (ECF No. 45-3 at 9.) One thing that is readily apparent from many of the usages of the "per insurance custom and practice" phrase is that it is placed at the end of sentences to disguise what would otherwise be regular lay opinion. In the above statement, Knowe essentially regurgitates what estimates and photos allegedly say or depict, and then states that the result is hail damage to plaintiff's roof. A juror is just as capable of reviewing photographs and reading estimates as Knowe, especially when, as here, Knowe fails to explain how his expertise in the good faith and fair dealing of insurance claims provides him with some vantage point unknown to a juror. In other words, Knowe's testimony is helpful only to the extent that he can link the facts to specific industry standards and say whether those facts violated those specific standards. *See Peiffer*, 940 P.2d at 971.

Sixth, Knowe's statement that "[defendant] has now claimed the hail damaged roof does not need to be replaced in deposition testimony, which was not a position supported by the Knott report nor any local roof contractor." (ECF No. 45-3 at 9.) Simply put, Knowe fails to explain why this is relevant to his opinions. And the Court can discern no reason why it is relevant, given that Knowe

does not state that defendant's purported deposition position was a reason for denying plaintiff's claim or the handling of plaintiff's claim. Thus, there is no reason for finding this statement to be relevant to whether defendant acted in bad faith in denying plaintiff's claim.

Finally, Knowe's statement that "the facts show the claim handling by [defendant] has deviated from the insurance custom and practice with the untimely and unreasonable investigation into his hail claim; repair figures not based on factual repair; unfair gaps in handling; unfair partial payment of owed policy benefits; and refusal to pay all owed policy benefits for hail damage." (ECF No. 45-3 at 9.) The court in *Peiffer* helps explain how a statement or series of statements such as the one quoted above may be acceptable. Specifically, in *Peiffer*, the expert testified to the facts of an insurer's conduct in light of the provisions of Colorado's Uniform Claims Settlement Practices Act ("UCSPA") and opined that the insurer had violated several provisions of the UCSPA. *Peiffer*, 940 P.2d at 971. The court concluded that the expert's testimony was relevant and helpful, and, although it mentioned legal standards, discussed those standards in terms of the facts. *Id*. As a result, Knowe may be able to testify that defendant did X, Y, and Z, and doing those things deviated from or violated A, B, and C standards, and, further, that, in Knowe's opinion, those deviations were unreasonable. Provided that Knowe testifies in such a manner, then the Court would not consider his testimony to be making improper legal conclusions. The above quoted statement, however, does not follow that structure. Moreover, it is not Knowe's role to say what is "unfair" or not; his role (if any) is to explain, for example, whether "gaps in handling" violated the standards of conduct for the insurance industry.

As for the remaining alleged improper legal conclusions or misstatements of fact, to the extent they are so, the Court believes that any misstatements or conclusions can be corrected on

11

cross-examination or by other evidence. For example, to the extent defendant does not believe that plaintiff fully cooperated with its duties under the parties' insurance policy (*see* ECF No. 45-3 at 5), defendant can present evidence indicating plaintiff's lack of full cooperation and/or cross-examine Knowe as to why he believes that plaintiff did fully cooperate. The same is true to the extent defendant does not believe that its SIU unit found no evidence of any prior hail damage claims for plaintiff, or that a report showed only two hail events between 2007 and 2013. (*See id*. at 6.)[4]

The Court need not go through every other alleged instance of impropriety or misstatement. The Court has reviewed all of the same, and has found, as with the examples mentioned above, that they can be corrected with opposing evidence or through cross-examination. The Court further finds that they do not render Knowe's opinions unreliable. The very nature of the inquiry defendant asks this Court to engage involves construing and interpreting the evidence in one way or another. Merely because Knowe has interpreted the evidence in a way defendant disagrees does not render Knowe's opinions unreliable. Although defendant may be able to *undermine* Knowe's opinions with its own interpretation of the evidence, that is not the same thing as Knowe's opinions being unreliable, at least not under the circumstances of this case.

This leads to defendant's alternative argument that Knowe's testimony, to the extent admissible, would be unfairly prejudicial. (ECF No. 45 at 12-13.) The Court does not think so for the reason explained *supra*—to the extent there are any misstatements in Knowe's expert report, those misstatements can be corrected on cross-examination or through other evidence. These opportunities to place Knowe's testimony in a purportedly more accurate light mitigates any

---

[4] The Court notes that, with respect to the findings of defendant's SIU unit, contrary to defendant's assertion, Knowe's expert report does not contradict itself. (*See* ECF No. 45 at 9-10.) Merely because plaintiff reported a prior hail event to a previous insurer does not mean that the SIU unit found evidence of prior hail damage.

potential prejudice defendant may suffer from such things as the jury assigning "talismanic" significance to Knowe's testimony or the jury being misled by the same. In addition, as more fully discussed below, to the extent Knowe's testimony is relevant, the Court finds that it would have probative value and would not be cumulative.

The Court ends with the issue it brought to light when first discussing Knowe's opinions—the relevance of the same. Although the parties spend a brief period of time arguing over whether Knowe is qualified to opine on Colorado insurance law (*see* ECF No. 45 at 8; ECF No. 49 at 5-6; ECF No. 54 at 2), neither party actually explains to the Court what it is Colorado insurance law is based upon when it comes to industry standards for dealing with an insured. And it is industry standards that are relevant here. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) ("Whether an insurer has acted reasonably in denying or delaying approval of a claim will be determined on an objective basis, requiring proof of the standards of conduct in the industry."). Thus, if "generally accepted insurance industry standards" are the standard of conduct in the insurance industry for handling insurance claims, then Knowe's testimony would be relevant, probative, and not cumulative. The Court, though, cannot answer that question on the present record, as plaintiff has failed to explain what are the "standards of conduct in the industry" for this case.

Instead, plaintiff asserts that "[t]here are no specific Colorado insurance industry practices and standards," and the standard is "generally the same state to state, with minor differences in details." (ECF No. 49 at 7.) Plaintiff will have to do a better job than that, especially given that plaintiff's statements are entirely unsupported. At the very least, plaintiff will have to present testimony from Knowe that the standards of conduct in the insurance industry are "generally the

same state to state." Plaintiff will also have to explain what are the "minor differences in detail" because differences in detail can be very important. *See* John Bartlett, *Familiar Quotations* 783 (16th ed. 1992) ("God is in the details."). Moreover, to the extent defendant disagrees with any testimony or other evidence plaintiff may present on these issues, such as disagreement that the standards of conduct in the insurance industry do not include generally accepted insurance industry standards, defendant may, of course, present evidence to support its position.[5]

Finally, plaintiff will have to provide some explanation of precisely what standard(s) Knowe is relying upon when he states "per insurance custom and practice." That catchall phrase is ever-present in Knowe's expert report, but rarely does Knowe state to what custom or practice he is referring. For example, Knowe states that defendant failed to "sufficiently investigate" plaintiff's claim of hail damage "per insurance custom and practice." (ECF No. 45-3 at 6.) The immediate question is: what custom? That insurance claims be investigated sufficiently? That is not particularly helpful, given that Knowe makes no attempt to describe defendant's investigation, explain what "sufficient[] investigation" means, or explain why defendant's investigation was insufficient in light of the purported custom or practice. *See South Park Aggregates, Inc. v. Northwestern Nat. Ins. Co. of Milwaukee, Wis.*, 847 P.2d 218, 225 (Colo. App. 1992) (explaining that an expert testified regarding "certain 'industry standards' govern[ing] the handling of insurance claims and that the reasonableness of an insurance adjuster's actions must be measured against 'the things an adjuster ordinarily does and reasonably does.'").[6]

---

[5] Defendant's ability to do this, however, may be somewhat undermined by its own expert's statement that "[i]ndustry practices are those practices that are uniform across the industry." (*See* ECF No. 49-3 at 2.)

[6] The Court further notes in this regard that, contrary to plaintiff's contention, defendant's expert's opinions are not inadmissible for the same reason defendant alleges Knowe is unqualified. (*See* ECF

As a result, at the forthcoming trial preparation conference, plaintiff is ORDERED to provide the testimony and/or evidence outlined above. Should plaintiff fail to present adequate evidence of the relevance of Knowe's testimony and expert report, the Court will grant defendant's motion to exclude in full.

## III. Conclusion

For the reasons discussed herein, the Court GRANTS defendant's motion to exclude testimony and strike expert report of Steven Thomas (ECF No. 44). The Court further GRANTS IN PART and DELAYS RULING UPON IN PART defendant's motion to exclude testimony and strike expert report of Peter Knowe (ECF No. 45).

**SO ORDERED.**

DATED this 30th day of May, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

No. 49 at 8.) As an initial matter, plaintiff did not object to defendant's expert. In addition, defendant's expert states that defendant's conduct complied with, *inter alia*, Colo. Rev. Stat. § 10-3-1104(1)(h). (ECF No. 49-3 at 2.) This is entirely permissible, given that the Colorado Supreme Court has held that § 10-3-1104(1)(h) "may be used as valid, but not conclusive, evidence of industry standards …." *See Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004). Whether expert testimony on the standards of § 10-3-1104(1)(h) is necessary under *Allen* is fact specific, *see id.*, but, as explained, plaintiff did not contest defendant's expert, and thus, plaintiff has waived any argument that defendant's expert's testimony is unnecessary.