**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-01758-RM-STV

358 LIBERATION LLC,

    Plaintiff,

v.

COUNTRY MUTUAL INSURANCE COMPANY,

    Defendant.

___

**OPINION AND ORDER**
___

Pending before the Court is defendant Country Mutual Insurance Company's ("defendant") motion to enforce settlement agreement and motion for fees and costs associated with enforcing settlement agreement ("the motion to enforce") (ECF No. 84). Plaintiff 358 Liberation LLC ("plaintiff") has filed a response in opposition (ECF No. 96), as well as an affidavit from Diana Haggar ("Haggar affidavit") (ECF No. 96-6). Defendant has filed a reply (ECF No. 97). The Court makes the following findings.

**I.    Legal Standard**

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quotation omitted). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Id*.

In Colorado, "[a]n attorney does not have the authority to compromise and settle the claim of a client without his or her knowledge and consent. Thus, generally, a client is not bound by a settlement agreement made by an attorney when the lawyer has not been granted either express or implied authority." *Siener v. Zeff*, 194 P.3d 467, 471 (Colo. App. 2008) (citation omitted). That being said, in this Circuit, a presumption exists "that an attorney has express authority to settle unless there is evidence to the contrary in the record." *Shoels*, 375 F.3d at 1060.

Also, in Colorado, "when a client discovers that an attorney has settled his claim without authority, the client must either timely repudiate the settlement and proceed with the lawsuit or ratify the settlement as an acceptable bargain." *Siener*, 194 P.3d at 471 (quotation omitted). "The focal point of ratification is an observable indication that the principal has exercised choice and has consented to having his or her legal relations affected." *Id*. "To exercise choice and consent, a principal must have full knowledge of all material facts of the transaction prior to the ratification, or at least knowledge of facts that would lead a reasonable person to investigate further." *Id*. at 472.

**II.     Discussion**

In the motion to enforce, defendant argues that the parties' proposed settlement agreement should be enforced because (A) plaintiff's attorney, Brandee Bower ("Bower"), had express or implied authority to settle this matter, and (B) plaintiff's representative, Diana Haggar ("Haggar"), ratified the settlement agreement. (ECF No. 84 at 6-11.) The Court addresses each argument below.

**A.     Authority**

Defendant argues that plaintiff has failed to make any showing that Bower lacked authority to bind plaintiff. (ECF No. 84 at 8.) Defendant argues that, instead, the record reflects that Bower had authority, pointing to Bower's representation of plaintiff at all hearings, depositions, and a

2

mediation. (*Id*. at 6.) In response, plaintiff asserts that Haggar has expressly disavowed that Bower had authority to settle plaintiff's claims. (ECF No. 96 at 6.) Plaintiff also points to events purportedly occurring prior to June 9, 2017—the date that this case was allegedly settled. (*Id*. at 6-7.) More specifically, plaintiff asserts that, in the days before June 9, plaintiff's lawyers had decided to move for reconsideration of a prior Order excluding an expert's testimony on the ground that Bower had disclosed an incorrect and incomplete version of the expert's report. (*Id*. at 2.) On June 9, though, Bower emailed defendant's counsel to say that she had authority from her client to accept $50,000—which had been offered at mediation. (*Id*. at 3.) Defendant's counsel replied that he could only offer $25,000, and, within 45 minutes, Bower responded that there was a deal. (*Id*.)

The Court finds that, on the present record, there is no evidence to rebut the presumption that Bower had authority to settle plaintiff's claims. The Court's principal reason for so finding is that the only evidence against the presumption is Haggar's affidavit. Therein, Haggar offers just one sentence with respect to Bower's authority. Specifically, Bower states: "I never authorized Ms. Bower to accept a $25,000 settlement and I have never signed any settlement documents accepting a $25,000 settlement." (ECF No. 96-6 at ¶ 8.) In essence, therefore, Haggar states that she did not authorize Bower to accept $25,000. What Haggar does not say is that Bower did not have authority to settle plaintiff's claims or that Bower was told that she did not have authority to settle plaintiff's claims for $25,000. As such, the Court rejects plaintiff's contention that Haggar's affidavit shows that Bower did not have authority to settle plaintiff's claims. (*See* ECF No. 96 at 6.) No such thing is said.

Haggar's affidavit, instead, reflects that Bower did have authority to settle plaintiff's claims, given that Haggar acknowledges that Bower and Haggar participated in mediation for the purpose

3

of settlement (*see* ECF No. 96-6 at ¶ 6), and there is no assertion that this authority was ever removed. Although the mediation did not result in a settlement, this does not mean that Bower could not settle plaintiff's claims. *See Shoels*, 375 F.3d at 1061 ("Parties often relax their supposedly non-negotiable demands over the course of negotiations, and the mere fact that a party does so through counsel does not suggest that counsel has exceeded the scope of his express authority."). Moreover, Bower's initial email to defense counsel on June 9, offering $50,000 to settle plaintiff's claims, expressly states that Bower made the offer with the authority of her client. (ECF No. 84-1 at 2.) *Cf. id*. (explaining that a letter, stating that the clients had "approved settlement," indicated, at face value, that the clients had approved the settlement themselves or authorized their attorney to do so). There is nothing in the record to suggest that Bower's authority to settle had changed when she accepted $25,000 on behalf of plaintiff a few hours later.

As for the events that preceded June 9, which plaintiff contends show that Bower had an "incentive" to avoid admitting a mistake (ECF No. 96 at 6-7), although the Court can see the argument that plaintiff is trying to make, the Court cannot find that Bower's conduct, even if true, negates her authority to settle plaintiff's claims, at least when, here, there is no statement from Haggar that Bower did not have authority to settle plaintiff's claims or that Bower was told that she did not have authority to settle for $25,000.

In this light, the Court finds that plaintiff has failed to rebut the presumption in this Circuit that Bower had authority to settle plaintiff's claims.[1] As a result, the Court GRANTS the motion to enforce on that basis.

**B.      Ratification**

Although not necessary in light of the Court's finding *supra*, so the record is complete, the Court also addresses defendant's argument that Haggar ratified the parties' settlement. Defendant

---

[1] In making this finding, the Court feels it necessary to make a few observations about the presumption set forth in *Shoels*. In *Shoels*, the Tenth Circuit stated that issues involving the formation and construction of settlement agreements are resolved by applying *state* contract law. 375 F.3d at 1060. The Circuit then explained that, in Colorado, it was settled law that an attorney cannot settle a claim unless the client expressly authorizes him to do so. *Id*. Then, the Circuit stated that, in another of its decisions, it had found a presumption that an attorney has express authority to settle unless there is evidence to the contrary in the record. *Id*. The problem this Court has with that presumption is that, as far as this Court can tell, it is not based upon Colorado law. The decision cited in *Shoels* is *Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966). *Shoels*, 375 F.3d at 1060. As support for the presumption, *Thomas* cites to a decision from the U.S. Supreme Court, which is not premised upon Colorado law, and two other Tenth Circuit decisions. *See Thomas*, 366 F.2d at 139. The first Circuit decision, *Feldman Inv. Co. v. Connecticut Gen. Life Ins. Co.*, 78 F.2d 838 (10th Cir. 1935), discusses a presumption, but in the context of the authority to act for a client by filing legal papers, not the authority to settle claims. *See Feldman*, 78 F.2d at 840. The second Circuit decision, *Hot Springs Coal Co. v. Miller*, 107 F.2d 677 (10th Cir. 1939), does discuss a presumption to settle cases, but, in support, cites the same U.S. Supreme Court decision, as well as decisions from West Virginia and Texas. *See Hot Springs*, 107 F.2d at 680. In other words, as far as the Court can tell, the provenance of the presumption does not arise from Colorado law. Colorado cases suggest there is a reason why no Colorado case is cited to support the existence of the presumption—because there is no such presumption under Colorado law. For example, in *Siener*, the court begins with the settled proposition that an attorney does not have authority to settle a claim without the client's knowledge and consent. 194 P.3d at 471. Then, rather than explaining that a presumption of authority absent contrary evidence exists, the court precedes straight to whether the challenged settlement had been ratified. *See id*. In other words, there was no middle step of considering whether authority was presumed. Instead, the court stated that, when a client discovers that an attorney has settled his or her claim without authority, he or she must timely repudiate or ratify. *Id*. Thus, rather than providing affirmative evidence that an attorney did not have authority to settle, it appears that all a client need allege is that he or she discovered that his or her attorney had settled without authority. There is even support for such a light means to rebut the presumption (to the extent it exists) in Tenth Circuit law. In *Hayes v. Eagle-Picher Indus., Inc.*, 513 F.2d 892, 893 (10th Cir. 1975), the Circuit concluded that, if a presumption of having authority to settle claims exists, "it is rebutted easily …."
      The Court sets forth the preceding commentary so that, should this matter find itself in the incoming mail of the Tenth Circuit, the Circuit can hopefully provide some guidance as to whether a presumption—that an attorney has authority to settle a client's claims—exists under Colorado law, and, if so, how easy or not it is to overcome such a presumption.

argues that Haggar ratified the parties' settlement through her silence in failing to raise any objection for nearly two months. (ECF No. 84 at 9.) In response, defendant asserts that it is not true that plaintiff was silent, as defendant has been on notice of a division between plaintiff and plaintiff's former counsel since at least July 10, 2017. (ECF No. 96 at 7-8.) In reply, defendant asserts that, Haggar's affidavit reflects that she was aware of the settlement since mid June 2017, and this notice required Haggar to inquire about the settlement. (ECF No. 97 at 6.)

The Court agrees with the latter argument from defendant. To repeat, "[t]he focal point of ratification is an observable indication that the principal has exercised choice and has consented to having his or her legal relations affected." *Siener*, 194 P.3d at 471. And, "[t]o exercise choice and consent, a principal must have full knowledge of all material facts of the transaction prior to the ratification, or at least knowledge of facts that would lead a reasonable person to investigate further." *Id*. at 472. Here, the undisputed fact is that Haggar, plaintiff's representative, was aware of the settlement between the parties in mid June 2017. (ECF No. 96-6 at ¶ 7.) Irrespective of when exactly mid June is,[2] even if the Court accepts plaintiff's assertion that there was "division" between Haggar and plaintiff's former counsel as of July 10, 2017 (*see* ECF No. 96 at 7), that still gave Haggar, as plaintiff's representative, nearly one month to do something about the settlement. There is simply no evidence in the record, including in Haggar's affidavit, that she did anything.[3]

Put in the context of the decision in *Siener*, Haggar was aware of a fact—the parties' settlement of this case for $25,000—and this fact would have led a reasonable person to investigate

---

[2] The Court will assume for present purposes that mid June means June 15, 2017.

[3] To the extent that plaintiff relies on a letter that Haggar submitted to the Court to show that Haggar may have acted in some fashion (*see* ECF No. 96 at 8), that letter was stricken by the Court (ECF No. 87 at 1), and is not part of the record.

further for the very reason that plaintiff now contests the settlement—because plaintiff did not consent to the $25,000 settlement. If plaintiff truly did not consent to the settlement then a reasonable person in Haggar's shoes would have done something to alert her attorneys to that fact or, at least, inquire from her attorneys about the settlement.

In *Siener*, the court explained that for a failure to timely repudiate to be a knowledgeable ratification, the party must be aware that he could obtain relief by timely repudiating. 194 P.3d at 473. However, the Colorado Supreme Court has also explained that "the law presumes whatever reasonable diligence would disclose," as "[a] litigant will not be heard to say he was ignorant of facts which it was to his interest to know, and which, if awake, he would have known." *Gordon v. Pettingill*, 96 P.2d 416, 418 (Colo. 1939). Here, reasonable diligence would have disclosed to Haggar that, having not consented to the settlement, she could have repudiated it, just as she has attempted to repudiate it since at least July 10, 2017.[4]

Put simply, in doing nothing about the $25,000 settlement from the time she knew of it in mid June 2017, Haggar exercised a choice, and thus, consented to the settlement. Therefore, as an alternative ground, the Court GRANTS the motion to enforce because plaintiff ratified the settlement by failing to timely repudiate.

## III. Request for Fees and Costs

In the motion to enforce, defendant also moves for attorney fees and costs incurred in litigating the motion to enforce. The Court declines to award defendant attorney fees and costs for

---

[4] Thus, this case is different to the one in *Siener*, where the litigant accepted payment from the Colorado Attorneys' Fund for Client Protection for the same amount that his attorney had absconded with after the attorney had agreed without consent to a settlement with another party. *See Siener*, 194 P.3d at 469. In that situation, the court could not find on the record evidence that the litigant was aware that, in accepting payment from the Client Protection Fund, he could repudiate the settlement that his attorney had made. *Id.* at 473.

this matter. As far as the Court is concerned, the decision it reached herein was not straightforward. The Court, thus, rejects any suggestion that plaintiff has offered "unfounded resistance" to the settlement or wasted judicial resources. (*See* ECF No. 84 at 10.) As a result, with respect to attorney fees and costs, the motion to enforce is DENIED.

**IV.     Conclusion**

For the reasons discussed herein, the Court GRANTS IN PART and DENIES IN PART defendant's motion to enforce (ECF No. 84). More specifically, the Court GRANTS the motion to enforce to the extent that the parties' $25,000 settlement shall be enforced. Accordingly, the Court finds that plaintiff 358 Liberation LLC is bound by the parties' $25,000 settlement. The motion to enforce is DENIED with respect to defendant's request for attorney fees and costs.

**SO ORDERED.**

DATED this 1st day of March, 2018.

> BY THE COURT:
>
> _____
> RAYMOND P. MOORE
> United States District Judge